No 29.—POLLY THOMAS, plaintiff in error, *vs.* THOMAS BRINS-
FIELD, defendant.

[1.] Trusts intended by the Courts of Equity, not to be reached or affected
by the Statute of Limitations, are those technical, continuing trusts which
are not at all cognizable at Law, but fall within the proper, peculiar and ex-
clusive jurisdiction of Courts of Chancery.

In Equity.   In Stewart Superior Court.   Tried before Judge
ALEXANDER, April Term, 1849.

Polly Thomas filed her bill in Stewart Superior Court, against
Thomas Brinsfield, charging that, in the year 1829, in the State of
North Carolina, being anxious to remove from that State, and
having no friend to whom she could apply, complainant was in-
duced to make application to Thomas Brinsfield, who then agreed
and undertook to remove complainant and her infant daughter,
together with the property of which she was possessed, consist-
ing of a horse and four negroes, to the State of Georgia, and to
afford her, her child and property, due and proper protection ;
that in pursuance of this agreement, Brinsfield furnished a wag-
on and one horse ; for which service, complainant alleged she
had paid the amount stipulated as compensation for his services ;
that Brinsfield, after arriving in Georgia, presuming upon the influ-
ence he had acquired over the conduct and property of the com-
plainant, took the sole and entire management of the property,
sometimes setting up title in himself, and continued to work and
use, and receive the profits of the labor of said negroes for about
six years from and after the year 1829, amounting to $1500.   The
bill charged the conversion of a portion of the property into
money, and the investment of it in other property ; but on the
trial, an account of the hire of the negroes alone was insisted upon.
The bill farther charged, that the defendant had fraudulently ob-
tained from complainant a bill of sale to all of this property, and
also a receipt in full for all claims, dated in November, 1835,
both of which were without consideration, and procured by threats,
persuasion and actual force.   The bill prayed discovery and an
account, &c.

The answer denied the equitable circumstances charged, ad-
mitting the possession, but claiming title to the property ; and ac-

Thomas *vs.* Brinsfield.

companying the answer was a plea of the Statute of Limitations. It is unnecessary to state the contents of the bill and answer more particularly, to understand the decision of the Supreme Court; nor is it necessary to include an abstract of the testimony before the Jury on the trial.

The only question in controversy, (which has been appealed to this Court,) before the Court below, was whether, under the facts charged, a trust was shown in Brinsfield so far as the hire of the negroes was concerned, and if there was a trust, whether or not the Statute of Limitations was a bar to the same.

The Court below charged the Jury that the complainant was not barred by the Statute until after demand and refusal to pay, or some other act of conversion on the part of Brinsfield.

On hearing a motion for a new trial, the Court granted the motion, and ordered a new trial, on the ground that " the only question was, whether the facts showed that Brinsfield held the hire *in trust*. If he did, the Statute of Limitations did not run until the termination of the trust. If he did not, it did. In the opinion of the Court, the facts showed no trust.

To the decision granting a new trial, complainant's counsel excepted.

H. L. BENNING, for plaintiff in error.

The facts in this case show a trust between the plaintiff and defendant—a trust by which he held the *hire* of the negroes for the benefit of the plaintiff.

1. It was *agreed* that Brinsfield should superintend the removal, &c. of the plaintiff's person and property, and afford *person* and *property due and proper protection*. Under this contract Brinsfield obtained *possession* of the property. It appears from the evidence, that soon afterwards Brinsfield acquired such an influence over the plaintiff as to induce her to live with him six or seven years as his wife. During this period he ' *took*' into his own management the negroes and received the profits of their labor. It must, therefore, be presumed that he so " *took*" this management with her *consent*. If so, that would make out a case of trust. 3 *Black.* 432. *Story's Equity*, §§980, 1210, 1255, 1261, 1258, 1259, 976, 465, *and note* 1, 532, 533, 534. A trust may grow out of a *tort*, as in case of executor *de son tort*.

Thomas *vs.* Brinsfield.

2. And a case of *direct* trust—one not subject to the Statute of Limitations. *Lewin on Trusts and Trustees,* 611, 612. 2 *Peere Wms.* 145, 146. *Chancery Cases,* 20 *to* 26. 2 *Mylne & Keene,* 225. 4 *Mylne & Craig,* 52.

3. The relationship of trustee and *cestui que trust,* as to the negro hire, between the plaintiff and defendant, did not terminate until the alleged settlement in November, 1835, which was less than *four* years before the bringing of the present bill.

Downing, for defendant.

1. The Court will not, unless in a peculiar case, control the discretion of the Superior Court in granting a new trial. 6 *Ga. Rep.* 185. 3 *Kelly,* 117.

2. A case of trust, in which the Statute of Limitations would not apply, must be one of *exclusive Equity jurisdiction.*

To a case in which a Court of Common Law has at least *concurrent,* if not *exclusive jurisdiction,* the Statute of Limitations would apply. *Angell on Limitations,* 161, 162, *note,* 174. 7 *John. Ch. Reps.* 89, 110, 113. *John. Reps.* 20, 576. *Angell on Limitations,* 166, 168, 169 *and cases cited,* 171,'2, *and note,* 173 *et seq.* 8 *Porter,* 211. 7 *John. Ch. Rep.* 112, 117, 121, 128. 1 *Story Eq.* (*old ed.*) *p.* 73, 503,'4. 13 *ed. p.* 71 *et seq. and* 544, *and cases cited.* 2 *Story Eq.* (*old ed.*) 735,'6, 3 *ed.* 902, *et seq. and note.* 3 *Bro. Ch. R.* 639, *note.* 2 *Paige N. Y. Ch. R.* 577. 8 *Pick.* 108. 11 *Ib.* 9. 4 *Cow. N. Y. R.* 717. 2 *Jac. & Walker,* 156. *Law Library,* 1, *p.* 40, 41. *Blanchard on Limitations.*

In the case at bar, no trust, not even declared by parol, as it might have been. 2 *Kelly,* 299.

Wellborn, for defendant, argued—

1st. That the true test by which the application of the Statute of Limitations as a bar to the plaintiff's demands is to be tried, must be sought in the answer to the question, whether the case made by the bill and proofs is one of an express, direct and continued trust? and our argument is, that the language of the bill and the evidence contained in the record, so far as they favor the plaintiff, concur in showing the defendant to have been a mere wrong-doer. Suppose, however, that it were possible to hold the

Thomas *vs.* Brinsfield.

defendant to the relation originally of bailee or constructive trustee to the plaintiff, yet the Statute of Limitations applies. *Stent vs. Millish,* 2 *Atk.* 610. *Beckford et al. vs. Wade,* 17 *Ves.* 88, 96, 97. *Murray vs. Coster,* 20 *Johns. Rep.* 576. *Trecotchic vs. Austin et al.* 4 *Mason,* 16.

2d. He also cited and remarked upon the cases of *Sherman vs. Sherman,* 2 *Vern.* 276. *Lansing vs. Starr,* 2 *Johns. Ch.* 150, 151. *Rayner vs. Pearsall,* 3 *Johns. Ch.* 586. *Nisbet vs. Lawson,* 1 *Kelly,* 275. *Prince's Digest,* 447.

*By the Court.*—NISBET, J. delivering the opinion.

[1.] Courts of Equity are not strictly within the Statutes of Limitation. Yet length of time, in analogy to the Statutes of Limitation, is as complete a bar in Equity a̶s̶ ̶a̶t̶ ̶l̶a̶w̶. ̶ ̶A̶ party's right or demand is barred by the laws ̶,̶ ̶t̶h̶e̶ ̶s̶t̶a̶t̶e̶,̶ ̶h̶e̶ ̶c̶a̶n̶'̶t̶ relieved from the operation of the laws, b̶y̶ going into Equity ̶t̶o̶ assert it. This would make the Courts ̶o̶f̶ ̶E̶q̶u̶i̶t̶y̶ ̶w̶i̶t̶h̶d̶r̶a̶w̶ ̶f̶r̶o̶m the wise and salutary operation of the St̶a̶t̶utes. The effect w̶o̶uld be, in all cases over which Equity coul̶d̶ ̶t̶a̶k̶e̶ ̶j̶u̶r̶i̶s̶d̶i̶c̶t̶i̶o̶n̶,̶ ̶t̶o̶ repeal the Statutes of Limitation. There a̶r̶e̶, however, so̶m̶e̶ subjects of Equity cognizance, exempted from t̶h̶e̶ ̶o̶p̶e̶r̶ation of the Statutes of Limitation. Among these are *trusts.* "Trusts, (says Mr. *Angell*) in their strict and technical sense, are known only in Equity, and falling, as they do, in such a sense, within the peculiar and exclusive jurisdiction of a Court of Equity, the doctrine has been long established, that so long as they subsist, they cannot be reached as between trustee and *cestui que trust,* by the Statute of Limitations." *Angell on Limitations,* §1, *ch.* 16, *p.* 161.

For the equitable principle upon which this doctrine is founded, I quote the language of Lord *Redesdale* in *Hovenden vs. Lord Annesly.* "If a trustee (says Lord *Redesdale,*) is in possession and does not execute his trust, the possession of the trustee is the possession of the *cestui que trust,* and if the only circumstance is, that he does not perform his trust, his possession operates nothing as a bar, because his possession is according to his title." 2 *Scho. & Lef. Ch. R.* 607.

It is not, however, every trust that is thus free from the operation of the Statute of Limitations. In the broad meaning of that term, every case of confidence reposed is a trust—as in case of

bailment, the loan of money and many other instances of like character. If all transactions between parties, which imply confidence, and also all trusts, which arise by operation of law, were exempt from the Statute bar, then would the range of its benign influences be greatly limited. Hence, to determine precisely what kind of trusts are not within the influence of the Statute, has been one of the most perplexing questions to the profession. And although great learning and great labor have been applied to its elucidation, it is not now free from difficulty, particularly in this State, for reasons that I shall hereafter mention. The case of *Kane vs. Bloodgood*, determined in New York by Chancellor *Kent*, in 1823, has led the Judicial mind of this country to a very great extent since that day. The opinion of the great American Chancellor, pronounced in that case, contains a review and analysis of the cases on the subject. The rule which he has deduced from them, so far as I can ascertain, has not been impugned by any respectable Court in this country. Indeed, the rule which he lays down, in its main features, had been long before ordained by high Chancery authority in England, and may be considered not as new, but as the rule of the British Chancery. If, upon this occasion, it were expected of me to review the authorities upon this subject, I should hold it no dereliction of duty, to waive it, by referring all learned and curious persons to that case. The rule to which I refer, is stated in these words : "The trusts intended by the Courts of Equity, not to be reached or affected by the Statute of Limitations, are those technical and continuing trusts which are not at all cognizable at Law, but fall within the proper, peculiar and exclusive jurisdiction of this Court." 7 *Johns. Ch. R.* 111. 3 *Kelly*, 396. An analysis of this rule gives the following results : The trust must be *technical* in contradistinction to *constructive* trusts ; the latter being subject to the operation of the Statute. All trusts are no doubt technical which spring expressly from the operation of the law, or are created by the act of the parties, and for a breach of which no remedy lies but in Chancery.

It must be a *continuing* trust. In case of a direct trust, so long as the trust is a *subsisting* one, and admitted by the acts or declarations of the parties, the Statute is no bar to the remedy of the *cestui que trust* against the trustee. But if the trustee should deny the right of his *cestui que trust*, and assume absolute ownership, from

Thomas *vs.* Brinsfield.

the time of such denial and assumption, the Statute would run in his favor against the *cestui que trust.* " When such transactions (says Ch. *Kent,*) take place between trustee and *cestui que trust,* as would, in the case of tenants in common, amount to an ouster of one of them by the other, I can hardly suppose that a Court of Equity would consider length of time afterwards as of no consequence.    There is no good reason why the Statute of Limitations should not apply to such a case as well as to cases of constructive trusts, and to cases of detected fraud, and to all other cases in which the Statute is assumed as a rule of decision."   7 *Johns. Ch. R.* 123, '4.    Such I understand to be an illustration of a *continuing* trust, in the language of Ch. *Kent's* rule.

Mr. J. *Story* carries this doctrine last stated, one step farther. He seems to hold that, if circumstances exist which raise a presumption from lapse of time, that the trust has been extinguished in case of a direct and positive trust, the Statute will bar the *cestui que trust.*    Adverting in *Baker et ux. vs. Whiting et al.* to the general rule, he says :  " This doctrine is regularly true, when it is received with the proper accompanying limitations ; *that no circumstances exist to raise a presumption from lapse of time, of an extinguishment of the trust,* and no open denial or repudiation of the trust is brought home to the knowledge of the parties in interest, which requires them to act as upon an asserted adverse title."   3 *Sumner R.* 486, '7.    *Angell on Limitations,* 171, '2.   4 *Mason's R.* 152.   2 *Jac. & Walker's Ch. R.* 1.    1 *Dev. & Batt. N. C. Eq. R.* 324.   9 *Pick.* 212.   4 *S. & R.* 310.   10 *Peters,* 223. 3 *Gill. & Johns.* 389.

The prime element in Ch. *Kent's* rule, is this : the *trust* must be such an one as is not *at all cognizable at Law, but falls within the proper, peculiar and exclusive jurisdiction of a Court of Equity.* It cannot be denied but that in the American and British Courts, this is recognized as the great test.   If Chancery *alone* can take jurisdiction of the trust, it is not within the operation of the Statute ; and on the other hand, if it is cognizable at Law, or if Courts of Law have over it, with Equity, concurrent jurisdiction, it is within the influence of the Statute.   As early as 1719, Lord *Macclesfield* said,  " Where one receives the profits of an infant's estate, and six years after his coming of age, he brings a bill for an account, the Statute of Limitations was a bar to such suit, *as it would be to an action of account at Law ;* for this receipt of the profits of

an infant's estate was not such a trust as being a creature of a Court of Equity, the Statute shall be no bar to, *for he might have had his action of account against him at Law ;* and, therefore, no necessity to come into this Court for the account." *Prec. in Ch.* 518. Lord *Hardwick* recognized the same test in *Prince vs. Heylin,* 1 *Atk.* 493, in *Brereton vs. Gamul,* 2 *Atk.* 240, and in the case of *Sturt vs. Mellish,* 2 *Atk.* 610. In the last named case, his Lordship said : " I agree, if it is a trust, it would not be within the Statute, but there is no color to call it so here. For a trust is, where there is such a confidence between parties, *that no action at Law will lie,* but is merely a case for the consideration of this Court."

Lord *Redesdale* expressly adopted the rule of Lord *Macclesfield* in *Hovenden vs. Lord Annesly.* 2 *Sch. & Lef.* 607. To the same extent go the modern cases. I forbear to refer to them. See *Angell on Limitations,* 161 to 170.

An illustration of a direct technical trust, created by act of parties, is found in the case of the *Administrators of Allen vs. Woolly,* (1 *Green. N. J. Ch. R.* 209.) The case was this: A executed a power of attorney to J W, and thereby placed her whole property at the disposal of the attorney, with full power to collect her choses in action, and to make sale of her goods and chattels, and out of the principal as well as interest of the proceeds to maintain and support her, with a provision that J W should account when required. It was held to be a direct trust to which a plea of the Statute was not applicable.

The most common illustration of the creation of a direct trust by operation of law, is the appointment and qualification of executors and administrators.

We have seen that to exempt a trust from the operation of the Statute, it must be *exclusively* of Equity cognizance. Hence, where the jurisdiction is concurrent over the subject matter, the Statute operates as a bar. It is well settled, that where a party may go either into Equity or into a Court of Law, and assert his remedy, the plea of the Statute is a bar. In England, the Statute does not apply to legacies and distributive shares, for there they are subjects of exclusive Equity jurisdiction. In New York, however, where by Statute there is a legal remedy for these, it has been held, that the Courts of Chancery ought to apply the same limitation to the equitable, which the

Courts of Law apply to the legal remedy. See Ch. *Kent* in *Kain vs. Bloodgood,* 7 *John. Ch. R.* 126, '7. In *Murray vs. Coster,* this was expressly ruled. Ch. J. *Spencer,* in that case, said, " I have, therefore, no hesitation in saying, that in a case where there is concurrent jurisdiction in the Courts of Common Law and of Equity, the rule must be the same, and the Statute of Limitations may be pleaded with the same effect in the one Court as the other. In cases of trusts and fraud, peculiarly, appropriately and exclusively the objects of Equity jurisdiction, according to the established doctrine, the Statute cannot be pleaded." 20 *John. R.* 583, '4.

In all those States where, by Statute, actions at law may be brought against executors and administrators, and a limitation is fixed to those actions, the Statute has been held a bar, both in Equity and at Law, except in cases of fraud and concealment. *Angell on Limitations,* 167. *Wisner vs. Barnet,* 4 *Wash. C. C. R.* 639. *Towzer vs. DeMeyer,* 2 *Paige,* 574. 5 *Cranch's R.* 322. *Buchan vs. James,* 1 *Baily's Eq. R.* 437. 1 *Speer's S. C. Eq. R.* 375.

In our State the Courts of Law have concurrent jurisdiction with the Courts of Equity, in all matters over which, by Statute, Equity has jurisdiction, as transactions between partners, and co-executors, distribution of estates and payment of legacies, and fraudulent transactions against creditors. *Prince,* 447.

The Statute fixes no limitation to actions brought under it, to enforce rights at Law growing out of these matters of concurrent jurisdiction. Yet the general Law of Limitations fixes the term within which the actions which would be necessarily brought, must be instituted. If then, in our State, it should be held that the general Law of Limitations applied at Law to suits brought for legacies and distributive shares, according to the decisions in other States, it would also apply in Equity, and the trusts of executors and administrators would not be free from the Statute bar. Hence it is, as I before hinted, that the subject of limitation of trusts in this State is one of peculiar difficulty.

I have thus endeavored to deduce the true rule as established upon authority, and have shown what I consider its extent and its chief modifications. What shall be its application in the cases which may spring up under our concurrent jurisdictions, I leave for this Court to determine when they shall be made.

Thomas *vs.* Brinsfield.

In no view of the rule, can the case made in this record be exempt from the operation of the Statute of Limitations. In the first place, it may be well questioned whether any trust at all was created in the transactions disclosed between these parties.

The bill is filed to compel the defendant to account for the hire of certain slaves belonging to the complainant. It charges, that complainant agreed with defendant, in North Carolina, that he should accompany her to this State, and afford to her and her daughter and property, such protection and aid as they might need, for so much per diem, which, he having rendered the services stipulated for, she paid to him. This was a contract of hire. Thus far there was no trust. Upon arriving in this State, it farther charges, the defendant, presuming upon his influence over her, and her confidence in him, took into his possession and control her negroes, and used them as his own, receiving their services and the proceeds of their labor. The bill charges that he fraudulently procured from complainant a bill of sale for the property, and also a receipt in full for all claims against her, and prays for discovery and account. The answer admits the possession of the property, and sets up a title to it, denying the equitable circumstances. Now, take the case as made by the bill alone, and it is very doubtful whether any trust is created. It looks more like a *tort*—an outrageous *tort*. Trover, it seems to me, would lie for the negroes. If they were in his possession by her consent, it was at any time competent for her to have withdrawn that, and upon demand and refusal he would have become liable in an action for them. So, also, to an action for their hire annually. An action of account, or for money had and received, would lie against him. It is not, therefore, if a trust, a technical continuing trust, not at all cognizable at Law, and belonging exclusively to a Court of Equity. The plea of the Statute was therefore properly held applicable to the case.

Let the judgment be affirmed.